IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIE JORDAN,

    **Plaintiff,**

    v.                                                        CASE NO. 24-3061-JWL

JEFF ZMUDA, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Willie Jordan is hereby required to show good cause, in writing to the Honorable John W. Lungstrum, United States District Judge, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein. Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

## I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is in custody at the Wichita Work Release Facility in Wichita, Kansas. The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff's claims appear to be based on his assault by another inmate while housed at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). Plaintiff claims that there should have been a central monitor in place to protect him. In his attached personal injury claim, he states that in September 2019 he informed then UTM Vanday that he needed a central monitor against Richard Showalter and Brad Sportsman, and he "witnessed her enter the central monitor order(s) into the computer system at that time." (Doc. 1–1, at 1.) Plaintiff states that the central monitor status was part of an agreement made between Plaintiff and the State to protect Plaintiff for testifying at "his" trial. *Id.*

Plaintiff claims that on March 12, 2023, he suffered a brutal assault by inmate Showalter that required Plaintiff to be rushed to Hutchinson Regional Medical Hospital due to his life-threatening injuries.  *Id*.  Plaintiff alleges that the assault occurred when he was at the HCF Central Unit in the gymnasium.  *Id*.  Plaintiff alleges that UTM Ketchum was "negligent and disregarded the excessive and substantial risk to [Plaintiff's] safety by (1) ignoring and dismissing [Plaintiff's] plea and concerns about the central monitor status . . . and by (2) not using due diligence to enforce the KDOC and HCF central monitor policy(ies) and failing to reasonable respond to protect [Plaintiff] . . .."  *Id*.  Plaintiff alleges that he made "him (them)" aware of the risk in September of 2019 and September/October of 2022.

As Count I, Plaintiff claims an equal protection violation "on aggressive & violent residents." (Doc. 1, at 4.)  For his supporting facts, Plaintiff states "see Ex. #1."  *Id*.  Exhibit 1 is Plaintiff's personal injury claim regarding the assault.  (Doc. 1–1.)  As Count II, Plaintiff claims deliberate indifference and due process.  *Id*.  As support, he claims that he was "stabbed several times after the unit team failed [to] correctly complete central monitor and failed to fulfill his duties."  (Doc. 1, at 4.)  As Count III, Plaintiff claims deliberate indifference and "medical negligence." *Id*. at 5.  As supporting facts, he states "not correctly completing grievances staff wise." *Id*.

Plaintiff alleges that Defendant Jeff Zmuda, Secretary of Corrections, failed to fulfill his duties under K.S.A. 75-5210 regarding the daily operations.  *Id*. at 1.  Plaintiff alleges that Defendant Melissa Waldock, Classifications Administrator, failed to comply with K.S.A. 75-5210 and 75-5252 and IMPPs by refusing Plaintiff's central monitor request.  *Id*. at 2.  Plaintiff alleges that Warden Dan Schnurr failed to comply with K.S.A. 75-5210, 75-5252 and 75-5212, and failed to comply with policies and procedures regarding central monitors. *Id*. at 3.  Plaintiff

alleges that Defendant Benjamin Ketchum, UTM, failed to protect Plaintiff when he failed to correctly file a central monitor under IMPP 01-118. *Id*.

Plaintiff names as defendants: Jeff Zmuda, Kansas Department of Corrections ("KDOC") Secretary of Corrections; Melissa Waldock, KDOC Classifications Administrator; Dan Schnurr, HCF Warden; Richard Showalter, HCF inmate; and Benjamin Ketchum, HCF Unit Team Manager ("UTM"). Plaintiff seeks compensatory and punitive damages. *Id*. at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### A. State Statutes and Prison Regulations

Plaintiff claims that Defendants Zmuda, Waldock, and Schnurr, failed to comply with Kansas statutes and the KDOC's Internal Management Policy and Procedures ("IMPP"). Violations of state law or prison regulations do not provide a cause of action under § 1983. Plaintiff must state a federal constitutional violation. State statutes do not provide a basis for liability under § 1983 which only protects rights secured by the Constitution and laws of the United States. *D.L. v. United Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) (finding that "Plaintiffs' citations to Kansas case law to support their claim . . . is unavailing, as § 1983 affords a remedy for violations of federal law and does not 'provide a basis for redressing violations of *state* law.'") (citation omitted).

Likewise, the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007). Plaintiff's claims based on state statutes and IMPPs are subject to dismissal for failure to state a constitutional violation.

### B.  Failure to Protect

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. Dec. 29, 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 990 (citations and alteration omitted).

"[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id*. at 1204 (citing *Strain*, 977 F.3d at 993). The official's response to the risk is also a consideration. *See id*. at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff does not provide supporting facts regarding whether or not anyone was aware that the other inmate posed a real danger to Plaintiff or that there was a strong likelihood of injury, as opposed to a mere possibility. Plaintiff does not allege that any Defendant was aware of a threat from Showalter. Plaintiff alleges that a central monitor was entered into the computer in 2019 as part of an agreement with the State. In other parts of the Complaint, Plaintiff suggests that a central monitor was not in place. Although it appears that Plaintiff had an agreement in exchange for his testimony, nothing in his allegations suggests that the inmate was violent or otherwise posed a safety threat to Plaintiff. Plaintiff has failed to allege sufficient facts to show that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Plaintiff should show good cause why his failure to protect claim should not be dismissed for failure to state a claim. Plaintiff is also granted the opportunity to file an amended complaint to set forth additional allegations showing that a defendant possessed enough details about a threat to enable them to conclude that it presented a strong likelihood of injury, not a mere

7

possibility. Plaintiff must allege that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

### C. Equal Protection

As Count I, Plaintiff claims an equal protection violation "on aggressive & violent residents." (Doc. 1, at 4.) As support, he references his attached personal injury claim regarding the assault. It is unclear how this attached document supports a claim based on an equal protection violation. To allege an equal protection violation, a plaintiff must state facts indicating that defendants treated him differently than other similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). Plaintiff has failed to allege that other inmates were similarly situated to him in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted). Plaintiff should show good cause why his equal protection claim should not be dismissed.

### D. Count III

As Count III, Plaintiff claims deliberate indifference and "medical negligence." (Doc. 1, at 5.) As supporting facts, he states "not correctly completing grievances staff wise." *Id*.

Plaintiff fails to state a claim in Count III. Plaintiff sets forth no facts regarding his medical care, other than that he was transported to the Hospital ER after the assault, and fails to name any medical staff as defendants. In addition, claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In addition, to the extent that his claim in Count III is based on his dissatisfaction with the grievance process, the Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials"). Any claim regarding the grievance process or the failure to properly respond to grievances, is subject to dismissal for failure to state a claim.

### E. Personal Participation

Plaintiff fails to allege how each named defendant personally participated in the

9

deprivation of his constitutional rights. Plaintiff cannot rely on the supervisory status of a defendant. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for

the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

"[A] failure-to-train claim may not be maintained . . . without a showing of a constitutional violation by the allegedly un-, under-, or improperly-trained officer." *Valdez v. Macdonald*, 64 F.4th 796, 813 at n.14 (10th Cir. 2023) (citations omitted); *see also Estate of Burgaz v. Bd. of Cty. Comm'rs*, 30 F.4th 1181, 1189 (10th Cir. 2022) ("[T]o be held liable for either a failure-to-train or failure-to-supervise claim, an individual officer (or deputy) must have committed a constitutional violation.") (citations omitted); *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (stating that "failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force").

**F. State Actor**

Plaintiff also names as a defendant the inmate that assaulted him. (Doc. 1, at 3.) Plaintiff has not shown that this defendant was acting under color of state law as required under § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988).

Because Plaintiff's Complaint fails to sufficiently allege that Defendant Showalter was acting under color of state law, this Court lacks jurisdiction over this defendant under § 1983. *See Whitehead v. Marcantel*, 766 F. App'x 691, 700 (10th Cir. 2019) ("We conclude that the complaint failed to provide sufficient factual matter to allege that Keefe was a state actor; therefore, the federal courts lack jurisdiction over this claim."). Plaintiff's claims against Richard Showalter are subject to dismissal because he is not a state actor.

## IV. Motion for Appointment of Counsel

Plaintiff filed a Motion for Appointment of Counsel (Doc. 3). Plaintiff argues that he is indigent and has been unable to find counsel. He also argues that he is incarcerated and unable to file things or to get motion paperwork. (Doc. 3, at 3–4.)

The Court has considered Plaintiff's motion for appointment of counsel. There is no constitutional right to appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to

investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  The Court denies the motion without prejudice to refiling the motion if Plaintiff's Complaint survives screening.

## V. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (24-3061-JWL) at the top of the first page of his amended complaint and he must name every defendant in the caption of the amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper amended complaint in which he

(1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **July 23, 2024,** in which to show good cause, in writing to the Honorable John W. Lungstrum, United States District Judge, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **July 23, 2024**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated June 21, 2024, in Kansas City, Kansas.**

                                           **S/ James P. O'Hara**
                                           **JAMES P. O'HARA**
                                           **UNITED STATES MAGISTRATE JUDGE**